UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___11/1/20___
```

Jose M. Quinones,

　　　　　　　Plaintiff,

　　　　　–v–

Captain Adam Rollison, Shield No. 192, Correction Officer
Eric Wilson, Shield No. 11616, Correction Officer Kenny
Rochez, Shield No. 5196, Correction Officer Sammy
Fernandez, Shield No. 5335, and Captain Carlos
Blackwood,

　　　　　　　Defendants.

18-cv-1170 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

　　　In 2016, Plaintiff Jose Quinones was detained at the George R. Vierno Center on Rikers Island.  On his first day at that facility, another inmate violently attacked him, and a corrections officer subsequently used pepper spray to break up the altercation.  Plaintiff now claims that Defendants, a number of Department of Corrections staff, used excessive force against him in breaking up the fight and were deliberately indifferent to his safety.  Defendants have moved for summary judgment on both claims.  For the reasons that follow, Defendants' motion is GRANTED.

## I.　BACKGROUND

### A.  The Facts

　　　The following facts are undisputed: In November 2016, the New York Police Department arrested Plaintiff Jose Quinones.  Dkt. No. 104 ¶ 3; *see also* Dkt. No. 93 Ex. D.  For about two weeks, Plaintiff was incarcerated at the Manhattan Detention Center, and he and two other inmates were subsequently transferred to the George R. Vierno Center (GRVC) on Rikers Island.

Dkt. No. 104 ¶ 5.  When he arrived at GRVC, Plaintiff asked a corrections offer which unit he was being placed in and which gang was in control of the unit.  *Id.* ¶¶ 6–7.  Plaintiff was informed that he was being placed in Unit 8A, and "that the Macballas controlled the unit."  *Id.* ¶ 8.  The parties agree that Plaintiff did not belong to the Macballas gang, but was instead affiliated with another gang.  *Id.* ¶ 9.  Plaintiff testified that he was a member of the Bloodhound Brims, which is affiliated with the Bloods.  *See* Quinones Dep., Dkt. No. 93 Ex. C., at 40:9–13, 45:21–46:1.  The two other inmates that came with Plaintiff from MDC were affiliated with other gangs.  Quinones Dep. 29:6–11 (noting that these individuals were members of the Ape and Gorilla gangs); *see also* Dkt. No. 104 ¶ 12.[1]  Plaintiff and the other inmates "notified the officer that their gangs had problems with the Macballas and that plaintiff expected he would be attacked."  Dkt. No. 104 ¶ 13.  Nonetheless, Plaintiff and the other two individuals were all placed in Unit 8A.  *Id.* ¶ 15.  Plaintiff did not inform other Department of Corrections staff members that he was concerned for his safety.  *Id.*

The next morning, Plaintiff was let out of his cell and spoke with a man named Mike, who he knew from his time living in Harlem.  *Id.* ¶ 19.  Mike informed Plaintiff that Unit 8A housed members of the Macballas and Patria gangs, and that there were "two other Blood gang members also inside the housing unit."  *Id.* ¶¶ 20–21.  Plaintiff then spoke with these "other Blood gang members" and learned that "the Bloods shared one of the Macballas' phones and were allowed to use it at certain times of the day."  *Id.* ¶ 22.  Later that day, after confirming with other Blood members that he could use the phone, Plaintiff made a phone call.  *Id.* ¶ 24.  On that

---

[1] Plaintiff admits this fact "to the limited extent that Plaintiff believed the two other inmates to be members of the Gorilla gang."  Dkt. No. 104 ¶ 12.  However, this proposition is conclusory, not supported by any citations to the record, and indeed contradicted by the record.  The same is true for other facts contained in Plaintiff's Response to Defendants' 56.1 Statement and Plaintiff's Rule 56.1 statement.  Plaintiff has therefore failed to raise a genuine dispute as to certain facts.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); Local Civil Rule 56.1(c)–(d).

call, he informed the individual with whom he was speaking that "he rejected an offer" from Department of Corrections officers "to go into protective custody . . . because he was trying to look cool." *Id.* ¶ 25.

While on the phone, at about 9 AM, Plaintiff was "slashed by another inmate." *Id.* ¶ 26. Specifically, "an inmate sliced Mr. Quinones in the cheek and neck, leaving a five-inch gash." Dkt. No. 105 ¶ 14.   The parties disagree about the exact details of what happened next, but here's the (undisputed) gist: Officer Sammy Fernandez, a defendant in this action, was working in Unit 8A at the time. Dkt. No. 104 ¶ 28.   Officer Fernandez described his job as "basically walk[ing] around and monitor[ing] the housing area." Fernandez Dep., Dkt. No. 93-8, at 25:2–47. Unit 8A contains two levels of cells, and Officer Fernandez was on the higher level at the time. *Id.* 25:11–13, 29:17–30:3 ("I was on the top tier of the housing area . . . I was letting inmates out of their cells."). After Plaintiff was attacked, Officer Fernandez ran to the stairwell, came downstairs, and "pushed his Personal Body Alarm immediately after he saw blood on the plaintiff." Dkt. No. 104 ¶ 30.

Plaintiff admits that after he "was cut he turned in an aggressive manner towards his assailant." *Id.* ¶ 31.   The assailant and the Plaintiff continued to fight—though the parties dispute who "threw the first punch." *See id.* ¶ 32.   Officer Fernandez "ordered the plaintiff and other inmate to stop," and Plaintiff admits that Officer Fernandez said "stop" while looking at him. Dkt. No. 104 ¶ 34.   Officer Fernandez further informed both inmates "that he would utilize his chemical agent if they continued to fight." *Id.* ¶ 35.   Plaintiff subsequently threw a garbage can in the direction of the inmate who had cut him and others who had gathered on the scene. *Id.* ¶ 36.   Officer Fernandez then used a "two-second burst of chemical agent," and both Plaintiff and his assailant were sprayed. *Id.* ¶ 37; *see also* Fernandez Dep. 55:1-16.   After Officer

Fernandez sprayed the chemical agent, "the fight stopped and the inmates dispersed throughout the housing area." *Id.* ¶ 39. A "probe team" then arrived and escorted both inmates out of the housing unit. *Id.* ¶ 40; *see also id.* ¶ 43 ("Approximately five minutes after the incident the plaintiff was escorted out of the unit."). Defendants have also provided undisputed video footage of this entire incident. Def. Ex. G.

Plaintiff was soon seen in the GRVC clinic by a doctor, and was then "referred to Urgi-Care where his laceration wound was treated with Dermabond/Sterile strips." *Id.* ¶¶ 41–42. A subsequent Department of Corrections investigation determined "that the plaintiff had been slashed by an inmate who belonged to the Trinitarian gang," not the Macballas. *Id.* ¶ 46.[2]

### B. Procedural History

In February 2018, Plaintiff filed this action under 42 U.S.C. § 1983. More than a year later, he filed a fourth amended complaint, which is the operative pleading in this matter. Dkt. No. 88. He named as defendants several Department of Corrections staff, such as Officer Fernandez and the officers who conducted his intake into GRVC. *Id.* ¶¶ 5–8.[3] Plaintiff alleged that Defendant Fernandez had violated his constitutional rights by using excessive force. And Plaintiff alleged that the other Department of Corrections Staff, whom the parties refer to as the "Intake Defendants," violated the Fourteenth Amendment's Due Process Clause by placing him into Unit 8A even though he expressed that he was not a Macballas member, thereby acting with deliberate indifference to his safety. *See id.*

---

[2] Plaintiff contends that Defendants' Exhibit K, a New York City Department of Corrections incident report, is inadmissible because it constitutes hearsay. However, this incident report satisfies all requirements for the business-record exception to hearsay, and the Court can thus consider it on summary judgment. *See* Federal Rule of Evidence 803(6); *United States v. Kaiser*, 609 F.3d 556, 574–75 (2d Cir. 2010).

[3] Plaintiff also named as Defendant Correction Officer Jane or John Doe, Dkt. No. 88 ¶ 5, but he subsequently consented to "dismissal of the John or Jane Doe defendants," Dkt. No. 99 ¶ 2.

After lengthy discovery, Defendants have moved for summary judgment on all counts. That motion is now before the Court.

## II.   LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.  A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249).  Moreover, if the evidence for the nonmoving party is a mere scintilla or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50.  A fact is "material" only if it will affect the outcome of the suit under applicable law, and such facts "properly preclude the entry of summary judgment."  *Id.* at 248.  Disputes over irrelevant facts will not preclude summary judgment.  *Id.*  The goal is to "isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that

there is an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325.

"It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential

element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial . . . ." *Jaramillo v.

Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see also

Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the

moving party has made a properly supported showing sufficient to suggest the absence of any

genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence

that would be sufficient to support a jury verdict in his favor.").

### III.    DEFENDANTS' MOTION IS GRANTED

#### A.  Plaintiff's Excessive-Force Claim against Officer Fernandez Fails

The Court begins with Plaintiff's claim that Fernandez's use of pepper spray constituted

constitutionally excessive force, in violation of the Fourteenth Amendment.  Section 1983

imposes liability on individuals who, while acting under color of state law, deprive a plaintiff of

a federal right.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  "A pretrial detainee who is

subjected to excessive force may bring a claim under § 1983." *Cunningham v. Rodriguez*, No.

01-cv-1123 (DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002).  Because the Eighth

Amendment's protection from cruel and unusual punishment does not apply "'until after

conviction and sentence,' the right of pretrial detainees to be free from excessive force

amounting to punishment is protected by the Due Process Clause of the Fourteenth

Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Graham v.

Connor*, 490 U.S. 386, 392 n.6 (1989)).  "The Second Circuit applies the same standard to

excessive force claims brought under the Fourteenth Amendment as under the Eighth

Amendment." *Virella v. Pozzi*, No. 05-cv-10460 (RWS), 2006 WL 2707394, at *3 (S.D.N.Y.

Sept. 20, 2006).

To establish a violation of the "right of pretrial detainees to be free from excessive force

amounting to punishment," a pretrial detainee must show that the force used against him was

"objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  This inquiry is

"context specific, turning upon 'contemporary standards of decency.'" *Blyden v. Mancusi*, 186

F.3d 252, 263 (2d Cir. 1999) (quoting *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)).

"Considerations such as the following may bear on the reasonableness or unreasonableness of

the force used: the relationship between the need for the use of force and the amount of force

used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

amount of force; the severity of the security problem at issue; the threat reasonably perceived by

the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

The Second Circuit has long made clear that "[n]ot every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

rights." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting *Johnson v. Glick*, 481

F.2d 1028, 1033 (2d Cir. 1973)).  In other words, "plaintiff must show that the harm incurred

was more than de minimis." *Berry v. City of New York Dep't of Corr.*, No. 12-cv-7819 (RWS),

2014 WL 2158518, at *5 (S.D.N.Y. May 22, 2014), *aff'd sub nom. Berry v. New York City Dep't

of Correction*, 622 F. App'x 10 (2d Cir. 2015).  The use of pepper spray "constitutes a significant

degree of force" and can in certain cases form the basis of a constitutional violation. *Tracy v.

Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) ("Unquestionably, infliction of pepper spray on an

arrestee has a variety of incapacitating and painful effects . . . ."); *see Berry*, 2014 WL 2158518,

at *5.  However, if the force was "applied in a good-faith effort to maintain or restore discipline,

it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law." *Adilovic v. Cnty. of Westchester*, No. 08-cv-10971 (PGG), 2011 WL 2893101, at *6 n. 12 (S.D.N.Y. July 14, 2011) (internal citation omitted) (quoting *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)); *accord Berry*, 2014 WL 2158518, at *5.

The Court concludes that, on the undisputed facts, no reasonable jury could conclude that Officer Fernandez's use of force was objectively unreasonable. *See Kingsley*, 576 U.S. at 397. To begin, the amount of force used was small.   It is undisputed that Officer Fernandez used only a two-second burst of pepper spray against Mr. Quinones. Dkt. No. 104 ¶ 37.  He used a similar, seconds-long spray to subdue the assailant, and the parties agree that the "plaintiff and his assailant were both sprayed *one time* [each] by Officer Fernandez." *Id.* ¶ 38 (emphasis added); *see also* Def. Ex. G (surveillance video demonstrating that pepper spray was used only for seconds).  This case is thus a far cry from *United States v. Praisner*, in which the pretrial detainee alleged that he had been "sprayed six times on four separate occasions over approximately 40 minutes, and was not decontaminated during that period."  No. 09-cr-264 (MRK), 2010 WL 2574103 (D. Conn. Apr. 27, 2010).

Moreover, even reading the record most favorably to Plaintiff, Officer Fernandez's use of force was proportional to the need for force.  Plaintiff does not dispute, and the surveillance video of the incident clearly demonstrates, that Officer Fernandez employed the two-second burst of pepper spray against two inmates who were in the midst of a violent fight involving a dangerous weapon, had been warned to stop their conduct, had nonetheless continued fighting, and had been specifically warned that failure to do so would result in the use of pepper spray. Dkt. No. ¶¶ 34–35.; Def. Ex. G.  Plaintiff's conduct posed a risk to other inmates, himself, Officer Fernandez, and other prison staff.  The parties agree that this limited force was sufficient

to achieve the desired end: "After the chemical agent was utilized the fight stopped and the inmates dispersed throughout the housing area." Dkt. No. 104 ¶ 39; *see also* Ex. G. And Officer Fernandez's repeated warnings speak to his efforts "to temper or to limit the amount of force . . . and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397; *accord Beauvoir v. Falco*, 345 F. Supp. 3d 350, 369 (holding that this factor favored summary judgment because "Defendants tried multiple times to convince Plaintiff to follow their orders . . . before resorting to use of force"). Indeed, despite Fernandez's warnings, Dkt. No. 104 ¶¶ 34–35, Plaintiff continued his involvement in the fight and threw a garbage can at his assailant and other inmates. *Id.* ¶ 36. Though Plaintiff contends that the garbage can was thrown in self-defense, and thus the Court should disregard this fact, Plaintiff's subjective state of mind is irrelevant—the Court must determine if Fernandez's actions, in response to these circumstances, was objectively reasonable. *See Kingsley*, 576 U.S. at 396–97.

Plaintiff contends that he has established a genuine dispute on his excessive-force claim because the pepper spray entered his fresh wound. However, as the Supreme Court has repeatedly admonished, a "court must make [the objective-reasonableness] determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. It is undisputed that Officer Fernandez had just come onto the first floor of Unit 8A and was the only officer on the scene, and had seconds to assess the situation before acting. *See* Ex. G; Dkt. No. 104 ¶¶ 28–29. Given the violent fight occurring before him between two inmates, using the two-second burst of pepper spray was not objectively unreasonable. This is true even though Plaintiff had suffered a serious, though not-life threatening, injury, and the pepper spray irritated his wound until he shortly thereafter received medical treatment. Dkt. No. 104 ¶ 41. Indeed, Officer Fernandez had

seconds to observe that injury, and he still used only proportionate force to "ensure compliance of an uncooperative . . . inmate," *Adilovic*, 2011 WL 2893101, at *6. Crucially, unlike in *Tracy*, there is no evidence that Officer Fernandez "applied pepper spray after [the plaintiff] had already been handcuffed and was offering no physical resistance of police commands." 623 F.3d at 98–99. To the contrary, Officer Fernandez quickly desisted from using pepper spray after his initial burst ended the confrontation. *See* Dkt. No. 104 ¶ 37 (Plaintiff concedes that Fernandez used a "two-second burst"); *id.* ¶ 39; Ex. G. And within one hour of the incident, Plaintiff was seen and treated by medical staff. *Id.* ¶ 41.

In sum, Officer Fernandez is entitled to summary judgment because Plaintiff has not established a material issue of fact as to the objective element of his excessive-force claim. *Accord Beauvoir*, 345 F. Supp. 3d at 369 (granting defendants summary judgment in a § 1983 case because the "use of the pepper spray . . . was permissible in the context of needing to maintain a baseline of order in the prison system," *even though* plaintiff "was not behaving belligerently or threateningly," in part because "Plaintiff repeatedly resisted multiple officers' orders"); *Berry*, 2014 WL 2158518, at **5–6 (finding evidence that defendant officer used pepper spray to break up a violent fight between inmates insufficient to raise a genuine dispute about excessive force, and thus granting defendants summary judgment); *see also Perry v. Stephens*, 659 F. Supp. 2d 577, 582–83 (S.D.N.Y. 2009).

### B.  Officer Fernandez is Also Entitled to Qualified Immunity

Plaintiff's excessive-force claim also fails because Officer Fernandez is entitled to qualified immunity. In other words, even if a reasonable jury could find that Fernandez violated the Fourteenth Amendment by using excessive force, he would still be entitled to summary judgment because he did not violate a *clearly established* constitutional right.

An officer may take advantage of qualified immunity, and thereby avoid liability for civil damages and the burdens of a lawsuit, if he demonstrates that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks omitted).  "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotation omitted). "[E]xisting law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* (quotation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted).  Moreover, the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 590 (quotation omitted). In other words, "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 149 S. Ct. 500, 501 (2019) (finding that defining the clearly established as "the right to be free of excessive force" was too general).  It is a "constitutional right[] of which a reasonable person would have known" and "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam) (internal citations and quotations omitted).  Summary judgment should be granted on the basis of qualified immunity only if "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively reasonable for the defendant to believe that he was acting in a

fashion that did not clearly violate an established federally protected right." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

Plaintiff contends that "no reasonable officer in the Second Circuit could have believed that he was entitled to use pepper spray on the fresh, open facial cut of the victim of an ongoing attack by another inmate." Dkt. No. 100 at 7.  This conclusory statement, however, is not enough to defeat summary judgment on this ground, as Plaintiff points to no Supreme Court or Second Circuit authority to this effect.  Moreover, Plaintiff omits from this statement myriad, undisputed facts in the record.  As noted, even reading the record most favorably to Mr. Quinones, Officer Fernandez was the sole DOC staff member that responded to an inmate-on-inmate altercation involving a dangerous weapon, observed Plaintiff and his assailant engaging in a fight, told Plaintiff to "stop" (which Plaintiff concedes he heard), told Plaintiff that failure to do so would result in the use of chemical agent against him, and observed Plaintiff move in an aggressive manner and throw a garbage can. Dkt. No. 104 ¶¶ 30–38.  Only then did Fernandez spray a two-second burst of pepper spray to stop the conduct.  Plaintiff has pointed to no authority—let alone binding authority—and the Court has found none suggesting that this proportionate use of non-deadly force to regain control of a violent situation in a prison constitutes unconstitutionally excessive force.  *See Wesby*, 138 S. Ct. at 589.

To the contrary, the Second Circuit has stated that "the use of entirely gratuitous force is unreasonable and therefore excessive . . . no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee." *Tracy*, 623 F.3d at 99 n.5.  Yet here, the undisputed facts establish that Officer Fernandez's use of force was *not* gratuitous, Plaintiff was *not* restrained, and Plaintiff *continued* his violent conduct after twice being warned to desist.  Similarly, in *Rodriguez v. City of New York*, the plaintiff's

complaint survived a Rule 12 motion because plaintiff alleged that the corrections officers sprayed pepper spray in an indiscriminate manner against him after assaulting another inmate. Case. No. 14-cv-8647 (PGG) (S.D.N.Y.), Dkt. No. 38, at 2–3, 9, 13.  Yet here, it is undisputed that Fernandez used pepper spray in a targeted and limited manner.  *See* Def. Ex. G.  On summary judgment, Plaintiff must offer more than allegations that Defendants' conduct constituted excessive force—yet even reading the record favorably to him, no reasonable jury could conclude that Fernandez's use of pepper spray was or gratuitous.  Because Officer Fernandez did not violate a clearly established right, he is entitled to qualified immunity on Plaintiff's excessive-force claim.  *Accord Berry*, 2014 WL 2158518, at **6–7 (granting qualified immunity on similar facts in this posture), *aff'd*, 622 F. App'x at 11 (holding that defendants were "entitled to qualified immunity"); *Beauvoir*, 345 F. Supp. 3d at 375–76 (same).

### C.  Defendants Are Entitled to Summary Judgment on Plaintiff's Deliberate-Indifference Claim

The Court next considers Mr. Quinones's claim that the Intake Defendants—Defendants Rochez, Wilson, Rollison, and Blackwood—were deliberately indifferent to the risk of harm that other inmates posed to him.  Specifically, Plaintiff claims that the Intake Defendants "were notified of a credible threat to Mr. Quinones' safety," as it is undisputed that upon intake to GVRC that Plaintiff and the two other inmates informed the Intake Defendants that they could not be placed in Unit 8A, because the Macballas controlled that unit and that "their gangs had problems with the Macballas and that plaintiff expected he would be attacked."  Dkt. No. 104 ¶¶ 10–13.  Because the Intake Defendants nonetheless placed him in Unit 8A, Plaintiff claims that "they recklessly failed to act with reasonable care to mitigate that threat."  Dkt. No. 100 at 9–10.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Therefore, "[a]llowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359 (S.D.N.Y. 2009).  However, not every injury that a prisoner suffers at the hands of another results in constitutional liability for the officials responsible for that prisoner's safety.  *See Farmer*, 511 U.S. at 834.  Instead, an official must act with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828.  When such claims are made by a pretrial detainee such as Mr. Quinones, they "are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment," which as discussed above applies only to convicted prisoners.  *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

To state a claim for deliberate indifference, plaintiff's allegations must satisfy a two-prong test, referred to as the "objective prong" and the "subjective prong" (better understood as the mens rea or mental element prong).  *See id.* at 30–32; *Taylor v. City of New York*, No. 16-cv-7857 (NRB), 2018 WL 1737626, at **11–12 (S.D.N.Y. Mar. 27, 2018).  Under the first prong, the inmate must show that the alleged violation was "sufficiently serious to constitute objective deprivations of the right to due process." *Darnell*, 849 F.3d at 29.  The second prong requires the defendant's deliberate indifference to the objective deprivation.  *See id.* at 32.  Specifically, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.  As the Second Circuit explained, "[i]n other words, the 'subjective prong' (or 'mens rea prong') of a deliberate

14

indifference claim is defined objectively." *Id.* Although *Darnell* involved a Fourteenth Amendment challenge to a prisoner's conditions of confinement, its holding also applies to failure-to-protect claims. *See id.* at 33 n.9 ("[D]eliberate indifference means the same thing for each type of claim under the Fourteenth Amendment."); *Taylor*, 2018 WL 1737626, at *12.

Here, the undisputed facts show that Plaintiff has failed to establish a genuine dispute as to either prong. At best, the record evidence shows that Plaintiff informed a still-unidentified intake officer that he could not be housed with Macballas gang members, in part because of "his knowledge that Macballas did not let anyone else live with them while inside correctional facilities." Dkt. No. 104 ¶ 14. However, Plaintiff did not inform "any of the officers in Unit 8A about his safety concerns." *Id.* ¶ 18. And another inmate in the unit, Mike, whom Plaintiff knew from his time living in Harlem, informed Plaintiff that "two other Blood gang members" also lived in the housing unit. *Id.* ¶ 21. Indeed, Plaintiff admits that he "spoke with other Blood gang members" and was informed that the Macballas permitted Blood members use one of the telephones in the unit at certain times of the day. *Id.* ¶ 22. It is therefore undisputed that there were multiple Blood gang members—as well as the other inmates who were not affiliated with the Macballas, such as the two individuals with whom Plaintiff's intake was processed—also housed in Unit 8A, and that these individuals were not attacked by Macballas. *Id.* ¶ 21.

Moreover, Plaintiff did not inform the Intake Defendants (nor does he now contend) that there was a more specific threat against him, such as one made by a specific Macballa member. *Cf. Rennalls v. Alfredo*, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) ("A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by [a] plaintiff to be separated from the attacker."); *Velez v. City of New York*, No. 17-cv-

9841 (GHW), 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019) ("Those cases which have found officers potentially liable for failing to prevent an attack involved clear and specific threats against an inmate.") (collecting cases). Given these undisputed facts, Plaintiff has failed to establish a genuine dispute that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 135; *accord Velez*, 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019) ("a number of courts in this district have found that an inmate informing an officer about a nebulous or untethered fear does not put an officer on notice that the inmate is at risk of attack") (collecting cases); *see, e.g.*, *Desulma v. City of New York*, No. 98-cv-2078 (RMB), 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (although prison official knew that the plaintiff feared certain inmates and had requested protective measures, "given the lack of prior history of violence between [plaintiff] and [his attackers,]" there was no reason for him "to infer the existence of a threat of harm").

For the same reason, no reasonable jury could conclude that the Intake Defendants "act[ed] intentionally to impose the alleged condition, or recklessly fail[ed] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. There are certainly no facts in the record, and Plaintiff does not point to any, suggesting that the Intake Defendants intentionally exposed Plaintiff to harm. And given the number of non-Macballas housed in Unit 8A and the generality of Plaintiff's comment made to a single corrections officer, Plaintiff has not established a genuine dispute that the Intake Defendants acted recklessly. *See* Dkt. No. 104 ¶¶ 16–18. Moreover, a Department of Corrections report created after the incident identifies the assailant as a Trinitarian gang member, not a Macballas member. *See* Def. Ex. K. It is undisputed that

16

Plaintiff never raised concerns about any gang other than the Macballas, and thus even with Plaintiff's statement, the Intake Defendants were not reckless in placing him in Unit 8A, which was controlled by the Macballas.  *See* Dkt. No. 104 ¶ 46.  In sum, Defendants are also entitled summary judgment on Plaintiff's deliberate-indifference claim.[4]  *Accord Anselmo v. Kirkpatrick*, No. 19-cv-0350 (TJM), 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019) ("[A]n inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014) and collecting cases).

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, Dkt. No. 91, is GRANTED.  The Clerk of Court is respectfully directed to enter judgment and close this case.


SO ORDERED.

Dated: November 1, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[4] For the same reasons, Plaintiff has not shown that the Intake Defendants violated a clearly established constitutional right.  They have pointed to no cases, let alone binding authority, holding "with specificity" that such conduct constitutes a violation of the Fourteenth Amendment.  *See City of Escondido, Cal. v. Emmons*, 149 S. Ct. 500, 501 (2019).  The Intake Defendants, like Officer Fernandez, are therefore also entitled to qualified immunity.